# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00372-COA

**DEKERRIUS FORD**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:              06/10/2020
TRIAL JUDGE:                   HON. W. ASHLEY HINES
COURT FROM WHICH APPEALED:     WASHINGTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        DEKERRIUS FORD (PRO SE)
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ASHLEY LAUREN SULSER
NATURE OF THE CASE:            CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                   AFFIRMED - 04/05/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.    Dekerrius Ford appeals from the dismissal of his motion for post-conviction relief (PCR).  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    In 2015, Ford and Jeremiah Hair stole a television, a television mount, and high definition multimedia cables from an Office Depot in Greenville.  The store's assistant manager, Sean Jackson, and two other employees told police that Jackson approached Hair and Ford as they attempted to leave the store with the merchandise, but Hair raised his shirt to display a handgun, placing the employees in fear for their lives.  As a result, the employees did not attempt to stop Hair and Ford from stealing the merchandise.  A Washington County

grand jury indicted Hair and Ford for armed robbery.

¶3.     In 2016, Ford entered a "best interest" or *Alford* plea[1] to the charge of armed robbery. At his sentencing hearing, Ford admitted that he participated in the robbery and that Hair displayed a gun to the store's employees. However, Ford claimed that he took part in the robbery under "duress" after Hair had threatened him at gunpoint. The circuit court found Ford's "story to be totally unbelievable" and sentenced Ford to a term of twenty years in the custody of the Department of Corrections, with fifteen years to serve, five years suspended, and five years of post-release supervision.

¶4.     In September 2017, Ford filed a PCR motion through retained counsel. Ford alleged that around May 2017, Hair's attorney had "discovered" a recording of a 911 call reporting the robbery. Ford claimed that the recording was "exculpatory" and that the State had committed a "discovery violation" by not disclosing it to him. Ford alleged that the 911 caller, "identified as Sean Jackson, denie[d] that there was a robbery and sa[id] the suspects just put items in the basket, looked at them, and walked [out] of the store." Ford also "claim[ed] that his plea was not intelligently given" because "he did not know about the [recording]." The circuit court denied Ford's motion, ruling that "a defendant who pleads guilty admits his culpability and, therefore, cannot later claim innocence even after the

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37-38 & n.10 (1970) (holding that a court may accept a guilty plea even if the defendant maintains his innocence provided there is a factual basis for the plea and the defendant voluntarily and intelligently concludes it is in his best interest to plead guilty).

discovery of evidence not known to him prior to his conviction." Ford did not appeal.[2]

¶5. The case against Hair proceeded to trial in December 2017. According to a sentencing order attached to Ford's present PCR motion, the jury convicted Hair of shoplifting, not armed robbery, and Hair received a suspended sentence of six months in the county jail.

¶6. In 2018, Ford filed a pro se PCR motion that made the same claims as his first PCR motion. The circuit court denied Ford's second PCR motion as an impermissible successive motion. *See* Miss. Code Ann. § 99-39-23(6). Ford appealed.

## ANALYSIS

¶7. Under the Uniform Post-Conviction Collateral Relief Act, an "order dismissing . . . or otherwise denying" a PCR motion "shall be a bar to a second or successive [PCR] motion." *Id.* Here, the circuit court denied Ford's first PCR motion in 2017, and Ford did not appeal. Therefore, Ford's present motion is barred unless he can show that it comes within an exception to the successive-motions bar. Ford bears the burden of proving that a recognized exception to the successive-motions bar applies. *E.g.*, *Badger v. State*, 290 So. 3d 377, 384 (¶29) (Miss. Ct. App. 2020).

---

[2] The circuit court erred to the extent that it held that a defendant who pleads guilty cannot seek post-conviction relief based on newly discovered evidence. The Mississippi Supreme Court has held that a defendant who pleads guilty may seek post-conviction relief based on newly discovered evidence and may rely on the newly-discovered-evidence exception to the applicable statute of limitations. *Chancy v. State*, 938 So. 2d 251, 252-53 (¶4) (Miss. 2006); *accord Huggins v. State*, 291 So. 3d 401, 403-04 (¶6) (Miss. Ct. App. 2020); *see also Johnson v. State*, 204 So. 3d 346, 349 (¶11) (Miss. Ct. App. 2016) (recognizing that "[t]he newly-discovered-evidence exception" to the successive-motions bar "does apply to situations where a defendant pleaded guilty"). However, Ford did not appeal the circuit court's ruling dismissing his first PCR motion. Therefore, the circuit court's "final judgment" dismissing Ford's first PCR motion remains "conclusive" and "a bar to a second or successive [PCR] motion." Miss. Code Ann. § 99-39-23(6) (Rev. 2020).

3

¶8. Ford argues his motion comes within a statutory exception for "cases in which the petitioner can demonstrate . . . that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." Miss. Code Ann. § 99-39-23(6). Ford argues that the 911 recording meets this standard. However, for two reasons, we conclude that Ford fails to meet his burden of proving that the exception applies.

¶9. First, Ford fails to show that the recording "is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." *Id.* Although Ford apparently attached the recording to his first PCR motion, he failed to make it part of the record in this case.[3] His second PCR motion only described the recording's alleged contents in general terms without attaching it. As a result, Ford cannot show that it is "practically conclusive" that the result would have been different if this recording had been available to him prior to his plea.

¶10. Second, Ford cannot establish that the 911 recording was not "reasonably discoverable at the time of" his guilty plea. Miss. Code Ann. § 99-39-23(6). Although Ford alleges that

---

[3] Ford's first PCR motion, which was filed as an exhibit to the State's response in this case, stated that the 911 recording was attached thereto as an exhibit. However, that exhibit was not made a part of the record in this case. In addition, Ford did not attach the recording to his second PCR motion, and he failed to show "good cause" for not attaching the recording. *See* Miss. Code Ann. § 99-39-9(1)(e) (Rev. 2020) ("[A PCR] motion shall state how or by whom [the] facts [alleged therein] will be proven. . . . [C]opies of documents or records that will be offered shall be attached to the motion. . . . [T]he copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained.").

the State did not disclose the recording in a response to a discovery request, he offers nothing to support this claim. With respect to this issue, the only relevant fact the record does establish is that Ford's codefendant, Hair, obtained the 911 recording at some point. Ford fails to show why he could not have also obtained the recording prior to pleading guilty. Thus, for multiple reasons, Ford cannot meet his burden of showing that his second PCR motion is excepted from the statutory bar on successive motions.

¶11. Although the primary focus of Ford's arguments is the 911 recording, his PCR motion and appellate brief also reference an allegedly exculpatory surveillance video from the store. However, Ford does not specifically allege that the surveillance video could not have been discovered prior to his guilty plea. Indeed, the contemporaneous police report in the record specifically discusses the video footage and notes that callers to crime stoppers identified Ford and Hair after the "video footage . . . was aired on television." Accordingly, the surveillance video was "reasonably discoverable" at the time of Ford's plea, and any claim related to it also cannot survive the successive-motions bar. *Id.* There is also nothing in the record to indicate that the video is exculpatory.

¶12. On appeal, Ford also argues that the circuit court erred by dismissing his second PCR motion without an evidentiary hearing. However, a circuit court may dismiss a PCR motion without an evidentiary hearing if the movant fails to show that his claim is "procedurally alive." *E.g.*, *Porter v. State*, 281 So. 3d 935, 938 (¶15) (Miss. Ct. App. 2019); *Dever v. State*, 210 So. 3d 977, 979 (¶2) (Miss. Ct. App. 2017), *cert. denied*, 229 So. 3d 118 (Miss. 2017); *Timmons v. State*, 176 So. 3d 168, 176 (¶35) (Miss. Ct. App. 2015). Ford was not entitled

to an evidentiary hearing because his motion was subject to the successive-motions bar.

¶13. Finally, Ford argues that his right to a "speedy trial" was violated by the delay between the filing and disposition of his second PCR motion[4] and delays by the circuit clerk and court reporter in preparing the record on appeal. However, the Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee "a speedy and public *trial*." (Emphasis added). They do not impose any requirements on collateral post-conviction proceedings. As the United States Supreme Court put it, the speedy-trial "guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges." *Betterman v. Montana*, 578 U.S. 437, 439 (2016). Moreover, although our Supreme Court has said that in "rare" cases "substantial delays during the criminal appellate process" may "implicate[]" "due process concepts," the Court has also made clear that the "denial of a speedy appeal is not reversible error on its own in this state." *Crawford v. State*, 192 So. 3d 905, 912-13 (¶38) (Miss. 2015). Therefore, Ford's complaints about delays in this successive post-conviction proceeding are also without merit.

¶14. In summary, the circuit court correctly dismissed Ford's second PCR motion as an impermissible successive motion. Miss. Code Ann. § 99-39-23(6). Therefore, the judgment of the circuit court is **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD,**

---

[4] Ford filed his second PCR motion in November 2018, but the circuit judge stated that he did not receive a copy until April 2020. The judge then ordered the State to respond and entered an order dismissing the motion in June 2020.

**LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**