# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01182-COA

**JOHN RAY KIDD**                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

DATE OF JUDGMENT:            07/02/2015
TRIAL JUDGE:                 HON. ANDREW K. HOWORTH
COURT FROM WHICH APPEALED:   UNION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      WILLIAM C. STENNETT
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BILLY L. GORE
NATURE OF THE CASE:          CIVIL - POSTCONVICTION RELIEF
TRIAL COURT DISPOSITION:     DENIED MOTION FOR POSTCONVICTION
                             RELIEF
DISPOSITION:                 AFFIRMED - 11/08/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     John Ray Kidd appeals the Union County Circuit Court's denial of his motion for

postconviction relief (PCR). Kidd argues that he is entitled to a vacated conviction and new

trial based on the existence of new evidence. Finding no error, we affirm.

### FACTS

¶2.     On February 8, 1998, Angela Allen accused Kidd of forcibly raping and sexually

assaulting her. After a trial held in June 1999, the jury found Kidd guilty of one count of

sexual battery and two counts of rape. The trial court then sentenced Kidd to serve

twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) for

sexual battery and thirty years in the custody of the MDOC on each count of rape, with all sentences to be served consecutively.

¶3. Kidd appealed his conviction and sentence, and in April 2001, this Court affirmed. *Kidd v. State*, 793 So. 2d 675, 677 (¶¶1-2) (Miss. Ct. App. 2001). Kidd filed a PCR motion in 2003, asserting the existence of newly discovered evidence. After conducting an evidentiary hearing, the trial court ultimately denied Kidd's PCR motion, finding that Kidd failed to obtain permission from the Mississippi Supreme Court. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015). On September 10, 2014, the supreme court granted Kidd leave to file this current motion to vacate his conviction and for a new trial based on his claim of the discovery of new, exonerating evidence not known or reasonably discoverable at trial.[1]

¶4. The record shows that upon filing his present PCR motion, Kidd provided the trial court with an affidavit from Dawn Pannell written on May 15, 2014, stating that on the evening of February 8, 1998, Pannell was at Dodger's Bar in Tupelo, Mississippi. Pannell stated that while at the bar that evening, she overheard Angela Allen and Roger Grimes plot to "set up" Kidd for rape in an attempt to extort money from Kidd. Pannell claimed that she cautioned Allen, "Don't do that." According to Pannell's affidavit, Allen responded that she intended to "get[ ] that money," and advised Pannell "for [her] own good to stay out of [Allen's] business." Pannell stated that when she left the bar, she observed Allen and Kidd sitting together. Pannell further stated that years later, during the summer of 2005, she saw Allen at Walmart and "told her that [Kidd] went to prison because of [her] and [Grimes]."

---

[1] The record shows that this constitutes Kidd's seventh PCR motion.

Pannell claimed that Allen admitted that Kidd would not "pay what we wanted" and she also admitted that she and Kidd never had sex. Pannell then stated that Allen told her "[D]on't ever mention this to [me] again," and walked away.

¶5. On April 9, 2015, and June 15, 2015, the trial court held an evidentiary hearing on Kidd's motion to vacate his conviction and sentence and for a new trial,[2] which the trial court treated as a PCR motion. At that hearing, the trial court heard testimony from Allen (the victim), as well as from several witnesses who did not testify at Kidd's 1999 trial: Pannell, Wayne Ray, Jimmy Putt, and Officer Chris Glasson of the New Albany Police Department. At the hearing, the State argued that Ray and Putt were available to testify at Kidd's trial in 1999.

¶6. On July 2, 2015, the trial court entered an order denying Kidd's motion. The trial court stated that Kidd filed a PCR motion claiming "he is entitled to relief based on newly discovered evidence in the form of an affidavit from Dawn Pannell, who claims to have firsthand knowledge that Kidd was falsely accused" of sexual battery and rape. The trial court observed that, although other alleged witnesses who did not testify at Kidd's 1999 trial provided testimony at the evidentiary hearing, the asserted newly discovered evidence presented by Kidd "is largely the testimony of . . . Pannell," who "testified under oath that [Kidd] was essentially 'set up' by the victim and that the victim's claim of being raped was fabricated." In denying Kidd's request to vacate his conviction and sentence and for a new

---

[2] The trial court held the evidentiary hearing after the supreme court's September 2014 order granting Kidd leave to file his motion to vacate his conviction and for a new trial.

3

trial, the trial court explained that it found Kidd's witnesses at the evidentiary hearing "totally devoid of credibility and not believable in the least."

¶7.     Kidd now appeals, asserting that the trial court erred in denying his motion to vacate his conviction and for a new trial. Kidd argues that the testimony of the witnesses presented at his evidentiary hearing amounts to newly discovered evidence that establishes that he was falsely accused by Allen of rape and sexual assault.

## STANDARD OF REVIEW

¶8.     "The appropriate standard of review for denial of [PCR] after an evidentiary hearing is the clearly erroneous standard." *Davis v. State*, 980 So. 2d 951, 954 (¶5) (Miss. Ct. App. 2007) (quoting *Johns v. State*, 926 So. 2d 188, 194 (¶29) (Miss. 2006)). However, when reviewing issues of law, this Court's proper standard of review is de novo. *Russell v. State*, 73 So. 3d 542, 544 (¶5) (Miss. Ct. App. 2011). The PCR movant has the burden of showing he is entitled to relief by a preponderance of the evidence. *Watkins v. State*, 170 So. 3d 582, 585 (¶10) (Miss. Ct. App. 2014).

¶9.     Mississippi Code Annotated section 99-39-23(6) (Rev. 2015) defines newly discovered evidence as "evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." A movant seeking a new trial based on a newly-discovered-evidence claim must show:

> (1) the new evidence was discovered after the trial; (2) it could not by due diligence have been discovered prior to trial; (3) it is material to the issue and not merely cumulative or impeaching; and (4) [it] will probably produce a different result or verdict in the new trial.

4

*Van Norman v. State*, 114 So. 3d 799, 801 (¶11) (Miss. Ct. App. 2013) (citing *Crawford v. State*, 867 So. 2d 196, 203-04 (¶9) (Miss. 2003)). "Relief must be denied if the movant fails to meet any one of these four elements." *Id*.; *see also Watkins*, 170 So. 3d at 587-88 (¶20) (In order "[t]o prevail on a newly-discovered-evidence claim, [Kidd] had to show evidence that is both newly discovered and material to the outcome of his convictions.").

¶10.    In PCR cases, when reviewing evidentiary hearings, "[w]e will not set aside [a trial court's] finding unless it is clearly erroneous. Put otherwise, we will not vacate such a finding unless, although there is evidence to support it, we are on the entire evidence left with the definite and firm conviction that a mistake has been made." *Meeks v. State*, 781 So. 2d 109, 111 (¶5) (Miss. 2001) (quoting *Rochell v. State*, 748 So. 2d 103, 109 (¶20) (Miss. 1999)).

¶11.    This Court will affirm a trial court where it reaches the correct result, even if we disagree with the court's reasoning for that result. *Ducksworth v. State*, 174 So. 3d 323, 324 (¶6) (Miss. Ct. App. 2015).

## DISCUSSION

¶12.    Kidd argues that the testimony of Pannell, supported by the testimony of Ray and Putt, supports Kidd's position that he should be afforded a new trial in this case based upon newly discovered evidence. The record reflects that the issue before us is whether the testimony of Pannell constitutes newly discovered evidence under controlling law, and if so, whether relief is therefore warranted.

¶13.    As stated, Kidd filed a PCR motion in 2003 asserting the existence of newly

5

discovered evidence, which the trial court ultimately denied after finding that Kidd failed to obtain permission from the Mississippi Supreme Court. The supreme court's September 2014 order granting Kidd leave to file the present PCR motion reveals that this constitutes Kidd's seventh PCR motion. Kidd's prior motions are not contained in the record.

¶14. Mississippi Code Annotated section 99-39-5(2) (Rev. 2015) provides that a movant must file a PCR motion "within three . . . years after the time in which [his] direct appeal is ruled upon by the Supreme Court of Mississippi." Section 99-39-23(6) bars petitioners from filing second or successive PCR motions. Section 99-39-23(6) provides an exception to this rule when the petitioner can show the existence of newly discovered evidence, or "evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence."

¶15. Pertinent to our review, we acknowledge that precedent provides an analysis to apply in determining whether evidence indeed constitutes newly discovered evidence warranting relief from the successive-writ bar as set forth in section 99-39-23(6).[3] This Court has further explained that newly discovered evidence can refer "to evidence, that is, an exhibit, testimony, or some other information that could have been offered as evidence in the defendant's trial but was not offered because it was not reasonably discoverable at the time of the trial." *McCoy v. State*, 111 So. 3d 673, 676-77 (¶10) (Miss. Ct. App. 2012). As stated,

---

[3] "Mississippi Code Annotated section 99-39-23(6), in pertinent part, has an exception for newly discovered evidence." *Johnson v. State*, No. 2015-CP-00234-COA, 2016 WL 2638072, at *2 (¶10) (Miss. Ct. App. May 10, 2016).

in order to prevail on his newly-discovered-evidence claim, Kidd must show: "(1) the new evidence was discovered after the trial; (2) it could not by due diligence have been discovered prior to trial; (3) it is material to the issue and not merely cumulative or impeaching; and (4) [it] will probably produce a different result or verdict in the new trial." *Van Norman*, 114 So. 3d at 801 (¶11). Stated otherwise, "to constitute newly discovered evidence the movant must show the evidence: (1) will probably produce a different result or verdict, (2) has been discovered since trial and could not have been discovered before trial by the exercise of due diligence, (3) is material to the issue, and (4) is not merely cumulative or impeaching." *Russell*, 73 So. 3d at 545 (¶9). If Kidd fails to meet any one of these four elements, we must deny relief. *Van Norman*, 114 So. 3d at 801 (¶11).

¶16. In the present case, during the evidentiary hearing on Kidd's PCR motion, the trial judge heard testimony from Allen, as well as other witnesses who did not testify at Kidd's 1999 trial: Pannell, Ray, Putt, and Officer Chris Glasson of the New Albany Police Department. Pannell testified regarding the allegations set forth in her affidavit. During the evidentiary hearing, Pannell stated that on the evening of February 8, 1998, she overheard Grimes tell Allen: "[I]f you got him off somewhere and say he forced himself on you, his daddy would pay big to shut you up." Pannell claimed that Allen then told her, "I'll get that money." Pannell testified that she tried to talk Allen out of doing it, but Allen insisted that she was going to go through with the plan to accuse Kidd of rape and then extort money from his father. When Pannell left the bar to go home, she observed Allen "sitting [in] the back of the bar at the table with her arm around . . . Kidd." Pannell further testified that she ran

7

into Allen at Walmart years later, in the summer of 2005. According to Pannell's testimony, Allen admitted to her that she knew Kidd went to jail after being convicted of raping her. In contrast to Kidd's defense at trial of consensual sex, Pannell claimed that Allen also told her that she and Kidd never had sex, and that Kidd's father refused to pay her off.

¶17. During the evidentiary hearing, Pannell admitted that she had consumed a few beers on the evening of February 8, 1998. Pannell also admitted that she was currently in a rehabilitation program for substance abuse. When asked to describe what Allen looks like, Pannell responded, "Are you serious? . . . As many years as it's been since I've seen her, I mean seriously. I spent five seconds with her at Wal-mart[,]" referring to the 2005 encounter between her and Allen that Pannell alleged in her affidavit.

¶18. Allen testified that Kidd raped her on the evening of February 8, 1998. She also testified that she had "never laid . . . eyes on [Pannell] before in [her] life." Allen denied Pannell's allegation that she engaged in a discussion with Grimes about "shaking down" Kidd.

¶19. Wayne Ray, who testified at Kidd's 2003 evidentiary hearing, also provided testimony at the evidentiary hearing on Kidd's present PCR motion. Ray stated that he knew both Allen and Kidd, and he had observed them talking to each other "10, 12, 15 times" at Dodger's Bar. Like Ray, Jimmy Putt also testified for Kidd at both the 2003 evidentiary hearing and the evidentiary hearing at issue. At the evidentiary hearing on the present PCR motion, Putt stated that he saw Pannell and Allen talking to each other at Dodger's Bar on the evening of February 8, 1998. Putt testified that he was threatened by an investigator named Mickey

Baker that if he came in and testified at Kidd's trial, Putt would be guaranteed jail time.[4]

¶20.   During closing arguments, the State argued that Pannell lacked credibility, explaining: "We had . . . Allen in here and [Pannell] says that in passing at a Wal-Mart entrance that she was able to recognize [Allen] immediately.  Yet in this courtroom she couldn't pick [Allen] out and identify her for the Court."  The State also argued that Ray and Putt, friends of Kidd who testified at the hearing to allegedly corroborate the proposed newly discovered evidence of Pannell's testimony, were available to testify at Kidd's trial in 1999, and both men also testified at Kidd's previous evidentiary hearing in 2003.  The State claimed that as a result, "this evidence that they're claiming to be newly discovered doesn't fit under that standard."

¶21.   The trial court ultimately denied Kidd's PCR motion after finding the testimony from all of Kidd's witnesses, including Pannell, "totally devoid of credibility and not believable in the least."  The trial court explained that Kidd's claim of newly discovered evidence "is largely the testimony of . . . Pannell," who "testified under oath that [Kidd] was essentially 'set up' by the victim and that the victim's claim of being raped was fabricated."  We recognize that "the trial judge, sitting in a bench trial as the trier of fact, has sole authority for determining credibility of the witnesses." *Johns*, 926 So. 2d at 196 (¶36).

¶22.   As acknowledged, the record reflects that the issue before this Court is whether Pannell's affidavit and testimony constitute newly discovered evidence warranting relief.

---

[4] As stated, the record reflects that Putt and Ray also testified at Kidd's 2003 evidentiary hearing held as a result of a prior PCR motion filed by Kidd in 2003 wherein Kidd also alleged newly discovered evidence.  The record reflects that the trial court denied Kidd's prior 2003 PCR motion after realizing that Kidd failed to obtain permission from the supreme court to file the motion.

*See Russell*, 73 So. 3d at 545 (¶9). In his PCR motion, Kidd asserts that Pannell's testimony should be considered in context with the other evidence in the case.

¶23. In reviewing Kidd's claim of newly discovered evidence, we acknowledge that the alleged newly discovered evidence pertains to impeaching Allen's trial testimony and asserting a financial motive. The context of the evidence in the record in this case shows that the conviction was not based solely on Allen's testimony. The record additionally shows that during the cross-examination of Allen at trial, the defense questioned her credibility and motives.

¶24. The trial transcript further reflects that Allen's testimony was corroborated with significant medical testimony. During Kidd's trial, the State presented medical evidence from emergency-room (ER) personnel, including an ER doctor, showing that Allen presented in the ER with contusions and abrasions to her rectal area, and her anus showed obvious signs of trauma. Allen also had a bruised and bloody nose and bruised neck. An ophthalmologist who subsequently examined Allen also provided testimony opining that the injury to Allen's eyes was consistent with slapping or choking. Additionally, the trial record shows that Allen presented in the ER with a portion of rope still around one of her ankles. Rope fibers and hair strands collected from Allen were consistent with hair strands and fibers found in Kidd's truck. As stated, the record also shows that Kidd's counsel cross-examined Allen at trial as to her credibility and alleged financial motives.

¶25. In reviewing Pannell's testimony in light of the criteria applicable to determining whether evidence constitutes newly discovered evidence, we find that it fails to meet the

10

criteria necessary to establish a claim for relief. *See Russell*, 73 So. 3d at 545 (¶9). The transcript from Kidd's trial reflects that the issues of Allen's credibility and motives, including the issue of a financial motive on Allen's part, were examined by the defense on cross-examination of Allen. As a result, we find that testimony from Pannell would merely be cumulative impeachment evidence. Moreover, Kidd has failed to show that Pannell's testimony would "probably produce a different result or verdict in the new trial." *Van Norman*, 114 So. 3d at 801 (¶11). As previously stated, the PCR movant possesses the burden of showing that he is entitled to relief by a preponderance of the evidence. *Crawford*, 867 So. 2d at 202 (¶7). As established by precedent, in order to prevail on his newly-discovered-evidence claim, Kidd must show: "(1) the new evidence was discovered after the trial; (2) it could not by due diligence have been discovered prior to trial; (3) it is material to the issue and not merely cumulative or impeaching; and (4) [it] will probably produce a different result or verdict in the new trial." *Van Norman*, 114 So. 3d at 801 (¶11). If Kidd fails to meet any one of these four elements, including proving that the new evidence was material to the issue, we must deny relief. *Id*.

¶26. Based on the foregoing, we find no abuse of discretion in the trial court's order denying Kidd's PCR motion. Accordingly, we affirm the trial court's denial of Kidd's PCR motion.[5]

¶27. **THE JUDGMENT OF THE UNION COUNTY CIRCUIT COURT DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

---

[5] *See Ormond v. State*, 599 So. 2d 951, 962 (Miss. 1992); *Johnson v. State*, 39 So. 3d 963, 965-66 (¶9) (Miss. Ct. App. 2010).

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**